James P. PASQUALE, Plaintiff, Appellee,

v.

Robert H. FINCH, Secretary of Health, Education and Welfare, Defendant, Appellant.

No. 7371.

United States Court of Appeals First Circuit.

Dec. 2, 1969.

Morton Hollander, Atty., Department of Justice, with whom William D. Ruckelshaus, Asst. Atty. Gen., Lincoln C. Almond, U. S. Atty., and Robert V. Zener, and Judith S. Seplowitz, Attys., Department of Justice, were on brief, for appellant.

Frank R. Mazzeo, Providence, R. I., for appellee.

Before ALDRICH, Chief Judge, WOODBURY,* Senior Circuit Judge, and COFFIN, Circuit Judge.

COFFIN, Circuit Judge.

The government has appealed from a final judgment by the district court, Pasquale v. Cohen, 296 F.Supp. 1088 (D.R.I.1969), granting the plaintiff Pasquale's motion for summary judgment and denying the defendant government's similar motion. While resisting the government's appeal on the merits, Pas-

* By designation.

quale also contends that the government lost its right to appeal by waiting 103 days before noticing its appeal. We consider the plaintiff's procedural objections first.

The district court entered its final judgment on March 11, 1969, remanding the case to the Secretary of Health, Education and Welfare for a computation of the disability benefits to which the court had found Pasquale entitled. Rule 4(a) of the Federal Rules of Appellate Procedure provides that in all cases in which the United States or its agencies or officers are a party, all parties shall have 60 days in which to notice their appeal. That 60-day period expired on May 12, the 60th day—May 10—being a Saturday. See Rule 6, F.R.Civ.P. The government did not appeal. However, Rule 4(a) also provides that the district court may extend the original appeal period for a period not to exceed thirty days "upon a showing of excusable neglect". Due to a mistake in the handling of the mail within the Justice Department, government counsel there first learned about the March 11 judgment on June 4. Seven days later, on June 11—the 30th day after May 12—the government filed a motion pursuant to Rule 4(a) to extend the time period for filing the Notice of Appeal, based on an allegation and affidavit of the requisite "excusable neglect". On June 23, the district court granted the government's motion and extended the filing time until the next day, June 24. The government filed its formal Notice of Appeal on June 24, the 43rd day after May 12.

■ Three issues are presented. First, we agree with the view of the government, the district court, and the Second, Fourth, and Sixth Circuits that the district court was not required to make its ruling on the government's motion within the 30-day period after May 12. C-Thru Products, Inc. v. Uniflex, Inc., 397 F.2d 952, 954–955 (2d Cir. 1968); Evans v. Jones, 366 F.2d 772, 773 (4th Cir. 1966); Reed v. People of the State of Michigan, 398 F.2d 800, 801 (6th Cir. 1968)[1]; see Reconstruction Finance Corp. v. Prudence Group, 311 U.S. 579, 582, 61 S.Ct. 331, 85 L.Ed. 364 (1941). To accept Pasquale's reading of Rule 4(a) might require the court to make a hasty and unconsidered decision, as in a case such as ours where the motion was filed on the 30th day. But see Plant Economy, Inc. v. Mirror Insulation Co., 308 F.2d 275 (3rd Cir. 1962); 9 Moore's Federal Practice, ¶ 204.13[2] at pp. 974–978.

■ Second, although the government's actual Notice of Appeal was filed on June 24—the 43rd day after May 12—rather than on June 11, the 30th day, we are willing to assume, for purposes of this case only, that its motion to extend on June 11 served as a notice of appeal for purposes of Rule 4(a). See Fitzsimmons v. Yeager, 391 F.2d 849, 853 (3d Cir. 1968) (en banc), cert. denied 393 U.S. 868, 89 S.Ct. 154, 21 L.Ed.2d 137 (1968); Carter v. Campbell, 285 F.2d 68, 71–72 (5th Cir. 1960); 9 Moore's Federal Practice, ¶ 203.09, ¶ 204.13[3] at p. 979. Obviously the proper procedure is to file the formal Notice of Appeal contemporaneously with the motion to extend—or at least within the 30-day extension period—and we look with disfavor on the government's inexcusable failure to comply with the clear mandate of Rule 4(a).

■ What troubles us even more, however, is the district court's holding that there was "excusable neglect" on the part of the government which justi-

---

1. In both Evans and Reed, the Notice of Appeal was filed within the 30-day extension period but no motion to extend was ever filed. Both Circuit Courts remanded to the district court for a determination of whether there was "excusable neglect" for the late filing of the Notice of Appeal. Without necessarily approving the court's rule which disregards any need for the timely filing of a motion to extend—with its supporting affidavits—we do agree with their rule that the district court's decision on whether to extend for "excusable neglect" need not be made within the 30-day extension period.

fied this 30 day extension. The only excuse offered by the government for the fact that the March 11 judgment was not discovered until June 4 was that the notification was mislaid due to a mistake in the handling of the mail after it was received by the Justice Department. While we accord "great deference" to the district court's ruling on "excusable neglect", Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 371 U.S. 215, 217, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962), we believe that the excuse offered, without further justification and in light of other factors indicated below, suggests that the 90 day delay here was indeed inexcusable and not the result of the type of inadvertence which Rule 4(a) was intended to rectify.

Rule 73(a), F.R.Civ.P., was amended in 1966 and recodified in 1968 as Rule 4(a), F.R.App.P. Concerning that amendment, which deleted the words "based upon a failure of a party to learn of the entry of the judgment" which had previously followed the words "excusable neglect", the Advisory Committee stated:

> "In view of the ease with which an appeal may be perfected, no reason other than failure to learn of the entry of judgment should ordinarily excuse a party from the requirement that the notice be timely filed. But the district court should have authority to permit the notice to be filed out of time in extraordinary cases where injustice would otherwise result." 9 Moore's Federal Practice, ¶ 73.01[22] at p. 3126.

In our case, counsel of record who had argued the case in the district court— the Rhode Island U. S. Attorney and his Assistant—received proper notice of judgment in early March. They conveyed such notice to the Justice Department and did no more; counsel at oral argument indicated that the supplementary procedure designed to prevent such inadvertent inaction, by the automatic filing of a protective appeal if nothing is heard from the Justice Department after a certain number of days, was inexplicably not carried out. *See* Department of Justice Order No. 207–60, § 6. The government is given a 60-day appeal period under Rule 4(a)—rather than the 30-day period normally afforded private parties and state governments and agencies—in order to accommodate interoffice routing procedures. 9 Moore's Federal Practice, ¶ 204.10 at pp. 923–924. Yet even though proper notice reached the Justice Department soon after March 11, it was apparently more than two months before the internal routing procedure finally brought such notice to the attention of the responsible government attorney; indeed, it appeared from oral argument that it was Pasquale's own inquiry about his benefits, rather than the routing procedure, which finally rendered notice to the responsible attorney. Even then, seven days passed before a Rule 4(a) motion to extend was filed, and even that may have been procedurally inadequate because the formal Notice of Appeal was not filed within the 30-day period which Rule 4(a) clearly requires. *See* discussion *supra.*

We cannot say that such mishandling within the Justice Department after authorized counsel of record receives actual notice, particularly when combined with the other indicia of carelessness indicated above, justifies a court in extending the time for appeal. *See* Brahms v. Moore-McCormack Lines, Inc., 18 F.R.D. 502 (S.D.N.Y.1955); Lowry v. Long Island Rail Road Co., 370 F.2d 911 (2d Cir. 1966); Long v. Emery, 383 F.2d 392 (10th Cir. 1967); but see Resnick v. Lehigh Valley RR, 11 F.R.D. 76 (S.D.N.Y.1951). To say otherwise is so to enlarge a remedial power devised for the exceptional case as to cover any kind of garden-variety oversight.

Nor does injustice result from our denial of an extension. A man who has erroneously—by the hearing examiner's own statement—been denied disability benefits in his first effort to obtain them should not be denied those benefits because his second effort is begun one month too late (*see infra*), when such

denial *now* depends on the government's obtaining a one month extension for itself under the circumstances we have noted. It does not shock us that depriving the careless government of a month to which it is not entitled, *see supra,* may result in giving a deserving claimant a month to which he would otherwise, *see infra,* not be entitled. Accordingly, we hold that the district court erred in granting an extension to the government in the aforementioned circumstances, so that the government's appeal is precluded.

This disposition would of course normally make unnecessary any consideration of the merits of the government's appeal. However, we feel compelled to discuss the merits simply because we believe that the district court has rendered a mistaken interpretation of the relevant regulations which could misguide future claimants. Our discussion of this point requires a brief review of the facts in this case.

In August 1961 Pasquale applied to the Social Security Administration for disability insurance benefits, alleging that he had become disabled as a result of a back injury some two years earlier. This application was denied on January 10, 1962. Further adminstrative appeals followed, culminating in a denial of benefits at the highest administrative level—the Appeals Council—on July 5, 1963. Pasquale was notified that he could commence an action in the federal district court within 60 days but no appeal was taken.

On February 10, 1966, Pasquale applied a second time for disability insurance benefits for the same back injury. On May 3, 1967, a hearing examiner found that Pasquale was indeed entitled to benefits for his disability which began at least as early as November 30, 1961, but that such benefits could only be awarded from February 1965, one year before the filing of the second application. Social Security Act, § 223(a) (b), 42 U.S.C. § 423(a) (b) (1964). Pasquale concedes the validity of that holding, but contends that the hearing examiner should have reopened his initial application of August 1961, which reopening would probably have entitled Pasquale to benefits for the full period of his disablement. The hearing examiner's refusal to reopen was sustained by the Appeals Council, which reasoned that 20 C.F.R. § 404.957—which provides for the reopening of a prior application, for good cause, within four years after its "initial determination"—did not apply to Pasquale because his first application had had its "initial determination" on January 10, 1962, four years and one month prior to the second application. Pasquale appealed this decision to the district court, which held that Pasquale could avail himself of that regulation since the "initial determination", as those words were intended by § 404.957, had occurred on July 5, 1963, the day the January 1962 determination had become final. Pasquale v. Cohen, 296 F.Supp. at 1093. Thus, we are confronted with the issue whether the words "initial determination" as they appear in 20 C.F.R. § 404.957 refer to the first determination by the Social Security Administration or to the Administration's final resolution of the first determination.

■ The reopening provision, 20 C.F.R. § 404.957, provides, in relevant part, that

> "An initial or reconsidered determination of the Administration or a decision of a hearing examiner or of the Appeals Council which is otherwise final * * * may be reopened:
>
> * * * * * *
>
> (b) * * * within 4 years after the date of *the notice of the initial determination (see § 404.907)* to the party to such determination, upon a finding of good cause. * * * [Emphasis added.]

The reference to § 404.907 which immediately follows the critical words clearly indicates that the words "notice of initial determination" refer to the notice concerning the first determination by the Administration regarding a given application, for that section requires the

Secretary to send notice to a claimant when the initial decision is made on his application and, if the application has been denied, to inform the claimant of his right to reconsideration. Pasquale's § 404.907 "notice of initial determination" was sent on January 10, 1962, more than four years before his effort to reopen for "good cause" was commenced.

Moreover, the repeated use of the phrase "initial determination" throughout these regulations—e. g., 20 C.F.R. §§ 404.902, 404.905–404.914, 404.917, 404.-953, 404.954, and 404.956—clearly indicates that the words refer to the first step in a four-step administrative appeals system: initial determination, §§ 404.905–404.908; reconsideration, §§ 404.909–404.916; hearing, §§ 404.917–404.940; and Appeals Council, §§ 404.-941–404.955. We have found no indication whatever that the phrase was used or intended in other parts of these regulations to mean anything but the first determination in the administrative scheme; the explicit reference to § 404.907 in the reopening provision itself is overwhelming evidence that "initial determination" was intended to have the same meaning there that it clearly has in § 404.907 and throughout these regulations. That the determination must be final before it can be reopened, as § 404.957 itself requires, is in no way inconsistent with our interpretation of § 404.957 that the reopening period begins with the notice of initial determination.

The district court concluded that the reopening provision's reference to "initial determination" was intended to mean the day on which the "initial determination" became final, here July 5, 1963. As we have indicated above, we can find nothing in the regulations to suggest that those words were intended to have that meaning; sections 404.947 and 404.950 relate to the notice of the Appeals Council's resolution of an application and had it been that determination which was intended by § 404.957, the reference there would have been to those sections, not to § 404.907.

The district court was concerned by the fact that the claimant who utilized all three administrative appeals might find that his four year "reopening" period had been substantially exhausted by his appeals, so that he would only have a short period in which to seek reopening rather than the full four years that one who made no appeals would have. We think this reasoning faulty for two reasons. First, to read the regulations as to the district court has would afford a much longer reopening period to the claimant who appealed than to the claimant who did not, thereby prejudicing the latter group. In other words, had Pasquale not appealed, he would only have until January 10, 1966, but since he did take an appeal within the Administration, he would, under the district court's interpretation, have until July 5, 1967 to seek reopening. More importantly, however, the district court overlooked the fact that a claimant has a right to introduce new evidence at each level of his administrative appeal. *See* 20 C.F.R. §§ 404.914, 404.925–404.930, and 404.949. Thus, while he may be using up some of his time for reopening, he has a continuing opportunity to have all his evidence heard whenever he produces it. We think that it would be inequitable to afford an appealing claimant an additional four years for reopening after he has already had additional hearings before the administration.

Thus, we conclude that the clear meaning of § 404.957 also produces a more equal treatment of all claimants. We can conceive of circumstances where these regulations might be administered in such a manner as to prejudice an appealing claimant, i. e., by deliberately delaying a determination on appeal so as to preclude reopening. We cannot believe that a court would be powerless in such exceptional circumstances to allow a reopening to one who sought it promptly. It should be remembered, however, that the regulation in question only bears on a claimant's right to reopen his application within the Administration; his right to

appeal to the federal district court within 60 days of the Administration's final decision exists in any event. 42 U.S.C. § 405(g) (1964); 20 C.F.R. § 404.951.

Appeal dismissed.