Edward MOORE, Appellant,

v.

W. Raymond NELSON, Warden, Federal Correctional Institution, Danbury, Connecticut, Appellee.

No. 111, Docket 79–2077.

United States Court of Appeals, Second Circuit.

Argued Sept. 5, 1979.

Decided Dec. 5, 1979.

---

Stephen Wizner, New Haven, Conn. (Dennis E. Curtis, Mary F. Keller, Alice Bussiere, Judith Resnik, and David Adam Reiser, law student intern, New Haven, Conn., on brief), for appellant.

Cheryl B. Wattley, Asst. U. S. Atty., New Haven, Conn. (Richard Blumenthal, U. S. Atty., and Philip S. Davis, law student intern, New Haven, Conn., on brief), for appellee.

Before KAUFMAN, Chief Judge, NEWMAN and KEARSE, Circuit Judges.

NEWMAN, Circuit Judge:

This appeal from a denial of a petition for habeas corpus concerns the parole guidelines currently being used by the United States Parole Commission. 28 C.F.R. § 2.20 (1978). The issue is whether the guidelines may be applied to a "(b)(2)" federal prisoner sentenced under 18 U.S.C. § 4205(b)(2) (1976), which makes him eligible for parole at any time, rather than at the one-third point of his sentence, when he would be eligible for parole if he received a regular adult sentence under 18 U.S.C. § 4205(a) (1976).[1]

Petitioner Edward Moore was sentenced pursuant to § 4205(b)(2) to eleven concurrent terms of four years for offenses involving forged Treasury checks. He began serving the four-year sentence on January 27, 1978. Because his (b)(2) sentence made him eligible for early parole, he received an initial parole hearing on April 19, 1978 after serving less than three months of his sentence.[2] The Commission denied parole, and the decision was upheld in administrative appeals at the regional and national levels.

The Commission explained the reason for parole denial in the Notice of Action, set

---

1. Section 4205 provides, in part, as follows:

(a) Whenever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law.

(b) Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interest of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than but shall not be more than one-third of the maximum sentence imposed by the court, or (2) the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may be released on parole at such time as the Commission may determine.

2. The initial parole hearing for a (b)(2) prisoner is required by statute to be held "whenever feasible" within 120 days of imprisonment. 18 U.S.C. § 4208(a). By regulation the Commission has committed itself to holding initial parole hearings within 120 days of imprisonment not only for (b)(2) prisoners but also for all prisoners except those serving terms of such length that their minimum parole eligibility is ten years. 28 C.F.R. § 2.12(a) (March 5, 1979).

out in the margin.[3] As this Notice makes clear, the Commission determined that under the parole guideline applicable to petitioner and to his offense a range of 48 to 60 months was to be served before release. Concluding after review of "all relevant factors and information" that a parole release decision below the guideline range was not warranted, the Commission continued Moore to the expiration of his 48-month sentence, but scheduled another hearing for October, 1979, as required by 18 U.S.C. § 4208(h)(1) (1976).

Moore challenged the denial of parole by seeking a writ of habeas corpus from the United States District Court for the District of Connecticut. That Court (Ellen Bree Burns, Judge) denied relief, finding the Commission's action entirely lawful.

On appeal,[4] Moore contends that the Commission, in deciding whether to parole a (b)(2) prisoner, (1) may not consider

**3.** CONTINUE TO EXPIRATION. REASON: Your offense behavior has been rated as very high severity because the total amount of checks involved was approximately $190,000. You have a salient factor score of 5. You have been in custody a total of 3 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 48–60 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision below the guidelines at this consideration is not found warranted. As required by law, you have been scheduled for a statutory interim hearing during Oct., 1979.

**4.** Since our jurisdiction is placed in doubt by the fact that the notice of appeal was filed on May 8, 1979, 148 days after entry of judgment on December 11, 1978, consideration must be given to the circumstances under which the notice was filed. On March 8, 1979, counsel for petitioner moved in the District Court for extension of time to file a notice of appeal. This occurred after the 60-day period from entry of judgment, in which notice of appeal is to be filed in a suit such as this in which an officer of the United States is a party, Fed.R.App.P. 4, but within the 30-day period provided by Rule 4 by which the District Court may extend the period for filing notice of appeal. The District Court requested briefs on whether there were substantial grounds for an appeal and granted the notion for extension of time on May 7, 1979. The notice of appeal was officially filed on May 8.

In this Circuit if a motion to extend the time for filing notice of appeal is filed within the 30-day extension period, a district court may grant the motion after the expiration of such period. *Matter of Orbitec Corp.*, 520 F.2d 358 (2d Cir.1975); *Stirling v. Chemical Bank*, 511 F.2d 1030, 1032 (2d Cir.1975); *C–Thru Products, Inc. v. Uniflex, Inc.*, 397 F.2d 952 (2d Cir.1968); *see also Pasquale v. Finch*, 418 F.2d 627 (1st Cir.1969). But though it may act on the motion after the 30-day extension period, the District Court may not extend the time for filing the notice of appeal by more than the 30 days allowed by Rule 4. *Matter of Orbitec Corp., supra; Dyotherm Corp. v. Turbo Machine Co.*, 434 F.2d 65 (3d Cir.1970). Thus, the District Court had no authority to permit the filing of a notice of appeal later than 90 days after entry of judgment, or March 11, 1979.

The correct procedure is to file the notice of appeal with the motion to extend time for filing and in no event later than the 30-day extension period. *Matter of Orbitec Corp., supra; Stirling v. Chemical Bank, supra; Pasquale v. Finch, supra; see also Linabary v. Maritime Overseas Corp.*, 376 F.Supp. 688 (S.D.N.Y. 1973). Otherwise an appellant has to rely on the doubtful proposition that the motion to extend time for filing notice of appeal can be considered to be a notice of appeal. *Compare Pasquale v. Finch, supra, with Dyotherm Corp. v. Turbo Machine Co., supra*, and *Linabary v. Maritime Overseas Corp., supra.*

However, in this case, when petitioner filed his motion for extension of time on March 8, 1979, he also served on defendant and attempted to file a notice of appeal. The notice was originally file-stamped March 8, 1979. That stamp was then crossed out, perhaps because the motion to extend time had not been granted or because a motion for leave to appeal *in forma pauperis*, also filed March 8, 1979, had not then been granted. Neither reason justified the purported "unfiling" of the notice of appeal. A notice of appeal may be filed before the motion to extend time has been granted, and since petitioner had previously been granted leave to proceed *in forma pauperis* in the District Court, he was entitled to proceed on appeal *in forma pauperis* without further authorization unless the District Court ruled to the contrary. Fed.R.App.P. 24(a). The Clerk of the District Court ultimately filed the notice of appeal on May 8, 1979, after the District Judge granted both the motion to appeal *in forma pauperis* and the motion to extend time. In these circumstances, we believe the notice of appeal served on March 8, 1979, and momentarily filed on that date, within the 30-day extension period, adequately invoked our appellate jurisdiction since the District Court subsequently validated the notice by granting the motion to extend time.

the severity of the offense for which the prisoner was sentenced and (2) must give primary consideration to the prisoner's progress toward rehabilitation. He asserts that the use of the guidelines, or perhaps the manner in which they are used, results in a parole decision that does consider offense severity and that fails to give sufficient consideration to rehabilitation. These alleged deficiencies, he contends, violate § 4205(b)(2) and usurp both legislative and judicial roles in the sentencing process.

We think the issues in this case are essentially matters of statutory construction. Prior to the enactment of the Parole Commission Reorganization Act of 1976 (PCRA), 18 U.S.C. §§ 4201–4218 (1976), the authority of a sentencing court to permit the Parole Board (as it was then called) to release a prisoner before the one-third point of his sentence was contained in what was then 18 U.S.C. § 4208(a)(2), Pub.L.No. 85–752, § 3, 72 Stat. 845 (1958). At that time there was no explicit statutory authority for the parole guidelines, which were first used experimentally by the Board in 1972. See *Battle v. Norton,* 365 F.Supp. 925 (D.Conn.1971); see, generally, Project, *Parole Release Decisionmaking and the Sentencing Process,* 84 Yale L.J. 810 (1975). From 1972 to 1976 it was a fair question whether the application of the guidelines to a then designated (a)(2) prisoner diminished the emphasis on rehabilitation in parole decision-making that was contemplated when § 4208(1)(2) was enacted in 1958. See *Grasso v. Norton,* 520 F.2d 27, 32–33 (2d Cir. 1975); *Garafola v. Benson,* 505 F.2d 1212, 1217–19 (7th Cir.1974).

However the issue ought to have been decided before 1976, it does not remain in doubt thereafter. While the PCRA continued the concept of an (a)(2) sentence re-

numbering the provision as § 4205(b)(2),[5] it also explicitly authorized the reorganized Parole Commission to establish parole guidelines, § 4203(a)(1), and mandated that release of a prisoner eligible for parole would be "pursuant to" the guidelines, § 4206(a). There is nothing in the text of the PCRA to indicate that the Commission is obliged to apply the guidelines differently to (b)(2) prisoners than to those serving regular sentences. The PCRA simply makes (b)(2) prisoners *eligible* for release before the one-third point of their sentences; it does not specify any special considerations that are to apply in determining whether to grant them parole below, within, or above the appropriate guideline range. See *Shahid v. Crawford,* 599 F.2d 666 (5th Cir.1979).

Nor does the legislative history of the PCRA provide a basis for requiring special parole consideration for (b)(2) prisoners. The Senate report noted that while "standards for release on parole . . . are not significantly changed from existing law," the "only notable change is that the standards and criteria are made the same for all federal prisoners without regard to which of the three main sentencing alternatives is utilized by the court."[6] S.Rep.No. 94–369, 94th Cong., 1st Sess. 18 (1975), *reprinted in* [1976] U.S.Code Cong. & Admin. News, pp. 335, 339–40. The Conference report emphasized the significance of the guidelines in parole decision-making. "[Section 4206] provides that Parole Commission guidelines, shall provide a fundamental gauge by which parole determinations are made." H.Conf.Rep. 94–838, 94th Cong., 2d Sess. 26 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 351, 359. In fact the Conference report states that § 4206 "permits the Commission to

---

**5.** The only wording change from the former § 4208(a)(2) to the present § 4205(b)(2) is that the former version authorized the court to specify that the prisoner may "become eligible for" parole at such time as the Board may determine, whereas the present version authorizes the court to specify that the prisoner may "be released on" parole at such time as the Commission may determine. There is no reason to think this is a change of substance.

**6.** The three alternatives provided by § 4205, to which Congress implicitly referred, are the regular adult sentence with parole eligibility at the one-third point, the (b)(1) sentence with parole eligibility set by the court at any point less than one-third of the sentence, and the (b)(2) sentence with parole eligibility at any time. *See* text of § 4205 at n.1, *supra.*

grant or deny parole notwithstanding the guidelines only when the Commission has determined that there is good cause to do so." *Id.* at 27, U.S.Code Cong. & Admin. News, p. 359. And when the Conference report illustrated what would be good cause for parole release below the guidelines, it mentioned "factors such as a prisoner's adverse family or health situation." *Ibid.* There is no reference to special consideration for (b)(2) prisoners.

We do not doubt that a prisoner's rehabilitation is an entirely appropriate consideration for the Commission to assess in deciding whether to grant release within or below the guidelines. But we cannot agree that in enacting the PCRA, Congress mandated that this factor receive extra consideration when the prisoner is serving a (b)(2) sentence. As for offense severity, Congress' emphasis on the use of the guidelines for all prisoners eliminates any doubt that this criterion, which is one of the two determinants of an appropriate guideline, may be considered for (b)(2) prisoners.

Before Congress explicitly authorized parole guidelines, we had occasion to point out that judges imposing what were then (a)(2) sentences frequently expected that rehabilitation would play a significant part in whether the prisoner obtained the early parole release for which the (a)(2) sentence made him eligible. See *Grasso v. Norton, supra,* 520 F.2d at 33. With the enactment of the PCRA and the increased realization within the judiciary of the manner in which the guidelines are applied,[7] it should now be clear to all sentencing judges that rehabilitation plays a minor part in the Commission's decision to parole a prisoner,[8] and has no special significance for (b)(2) prisoners. We trust that no sentencing judge will mistakenly believe that a (b)(2) sentence significantly increases the likelihood of parole release before the one-third point of a sentence[9] or at any point below the guideline range.

While we have previously questioned the wisdom of applying the parole guidelines to prisoners like Moore who are in effect serv-

7. *See, e. g.,* Memorandum of William E. Foley, Director of the Administrative Office of the United States Courts (July 3, 1978), sent to all United States District and Circuit Judges, enclosing the Parole Commission's November, 1977 Guideline Application Manual.

8. Under current Commission regulations, a prisoner's performance in prison primarily impacts the parole decision only in a negative way: a prisoner will not be granted parole, regardless of his guideline range, unless the prisoner "has substantially observed the rules of the institution or institutions in which he has been confined." 28 C.F.R. § 2.18 (March 5, 1979). It is true that among the information about a prisoner that the Commission has bound itself to consider are "reports and recommendations which the staff of the facility in which the prisoner is confined may make." § 2.19(a)(1). However, the opportunity for these reports to have much impact on the parole decision has been substantially reduced by the Commission's new practice of setting either a "presumptive release date" or an "effective date of parole" at the initial parole hearing held for most prisoners within 120 days of incarceration. § 2.12(b). The expected release date is normally determined by application of the guidelines §§ 2.13(d), 2.20. The presumptive date is contingent upon a prisoner's "continued record of good conduct," § 2.12(d). While exemplary prison conduct, reflected in staff reports, could theoretically move up the parole

release date, there is no reason to believe this occurs in any but exceptional cases.

9. Even before enactment of the PCRA, release of former (a)(2) prisoners on parole prior to the one-third point of their sentences was occurring far less frequently than many persons had supposed. This is apparent from a study of prisoners released from custody in 1970 either by parole or by mandatory release after service of their sentences. Of the released prisoners with no disciplinary infractions who had been serving regular adult sentences, 21.8% were released on parole at the one-third point of their sentences; of the released prisoners with no disciplinary infractions who had been serving adult indeterminate terms, nearly all of whom were (a)(2) prisoners, 31% were released on parole at or before the one-third point of their sentences. Brief of the United States at 55 n.47, *United States v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Since some of the prisoners in this 31% were released *at* the one-third point, the (a)(2) sentence was not causing a significant number of prisoners to be released *before* the one-third point. With the advent of the parole guidelines, the number of (a)(2) and now (b)(2) prisoners released on parole before the one-third point can be expected to decrease. Since release pursuant to the guidelines can normally be expected, a (b)(2) sentence will tend to result in release on parole before the one-third point only when the guideline range calls for a

ing indeterminate sentences in view of their early parole eligibility, *United States v. Jackson*, 550 F.2d 830, 832 (2d Cir.1977) (Youth Corrections Act sentence); *United States v. Cruz*, 544 F.2d 1162, 1164–65 n.6 (2d Cir.1976) (same), we have acknowledged that if changes are to be made, they are matters for "administrative reform or Congressional action." *United States v. Jackson, supra*, 550 F.2d at 832. *Shepard v. Taylor*, 556 F.2d 648, 654 (2d Cir.1977), also makes clear the lawfulness of applying the parole guidelines to a prisoner sentenced under the Youth Corrections Act, provided the offense occurred after the enactment of the 1976 legislation.

We have considered the Third Circuit's extensive critique of the parole guidelines in *Geraghty v. United States Parole Commission*, 579 F.2d 238 (3d Cir.1978), *cert. granted*, 440 U.S. 945, 99 S.Ct. 1420, 59 L.Ed.2d 632 (1979), and respectfully disagree with the views there expressed as to both statutory issues and constitutional overtones. Whatever differences in viewpoint may have been expressed as the initial versions of the PCRA moved through the House and Senate, *id.* at 256–59, we are satisfied that the enacted version permits the Commission to apply its guidelines to (b)(2) prisoners and precludes the courts from attempting to restructure the manner in which the Commission exercises its discretion in individual cases. Moreover, we find no intrusion by the Commission upon legislative or judicial prerogatives. Congress specifies the maximum sentence, and, on occasion, the minimum sentence. Within statutory limits the district court selects an appropriate sentence. Whether the defendant serves all or only some portion of that sentence is essentially a matter within the discretion of the Parole Commission.

Of course, the Commission's discretion must be exercised within the bounds of law imposed by the statute and by the Constitution. Those bounds have not been exceeded in this case.

Affirmed.

period of incarceration that is less than one-third of the sentence. That will rarely occur with sentences of less than five years. Thus,

prisoners serving (b)(2) sentences of less than five years will rarely be released on parole before the one-third point of their sentences.