Ernest W. SHAHID, Jr.,
Petitioner-Appellee,

v.

Curtis C. CRAWFORD et al.,
Respondents-Appellants.

No. 77–2239.

United States Court of Appeals,
Fifth Circuit.

July 27, 1979.

Ira DeMent, U. S. Atty., Kenneth E. Vines, Asst. U. S. Atty., Montgomery Ala., Glenda G. Gordon, U. S. Dept. of Justice, Washington, D. C., Joseph F. Ciolino, Burke, Va., for respondents-appellants.

Alfred R. Roach, Jr., Richard D. Elliott, Atlanta, Ga., Robert D. Segall, Montgomery, Ala., for petitioner-appellee.

Before TJOFLAT and HILL, Circuit Judges, and HIGGINBOTHAM,* District Judge.

TJOFLAT, Circuit Judge:

This is an appeal from an order granting the petition of Ernest W. Shahid, Jr., for a writ of habeas corpus. The issues raised by the petition are whether the United States Parole Commission (the Commission) has complied with its statutory obligation to "state with particularity" its reasons for denying Shahid parole, 18 U.S.C. § 4206(b) (1976), and whether the Commission abused its discretion by denying parole to a prisoner who has served one-third of an 18 U.S.C. § 4205(b)(2) (1976) sentence and who has shown superior institutional adjustment during his incarceration. We resolve these issues against the petitioner and reverse the judgment of the district court.

I

Upon pleas of guilty, Shahid was convicted of possession of cocaine and using a telephone to cause or facilitate the distribution of cocaine. 21 U.S.C. §§ 844(a), 843(b) (1976). He was given consecutive one year and four year sentences, respectively, the maximum for each offense. As permitted by 18 U.S.C. § 4205(b)(2), the sentencing court declared Shahid eligible for release on parole at such time during his incarceration as the Parole Commission might determine.[1]

Shahid began service of his sentence on February 20, 1975. He was denied release at his initial parole hearing in September 1975. He had a second hearing in May 1976, at which point he had completed one-third of his term. The progress report submitted by his caseworker described his institutional adjustment as "excellent" and "outstanding," Record at 27, and, for this reason, one of the two hearing examiners assigned to his case voted for reconsideration for parole prior to the time indicated by the Commission's established guidelines.[2] The other examiner voted to stay within the guidelines, and the split was resolved by the administrative hearing examiner's vote

---

* District Judge of the Northern District of Texas, sitting by designation.

1. When Shahid was sentenced, the authorization for indeterminate sentences was 18 U.S.C. § 4208(a)(2) (1970). This section was recodified as 18 U.S.C. § 4205(b)(2) by the Parole Commission and Reorganization Act, Pub.L.No. 94-233 § 2, 90 Stat. 222 (1976), which also changed the name of the Board of Parole to the United States Parole Commission. For convenience, references throughout this opinion conform to the statute as recodified and amended.

2. The Commission's regulations set forth certain guidelines that indicate, for various combinations of offenses (severity levels) and offender characteristics (salient factor scores), the customary range of time to be served by an inmate before release. 28 C.F.R. § 2.20 (1978). The degrees of offense severity range from "low" to "greatest" in graduated steps, and a number of examples of offenses are given for each degree. The best possible salient factor score is 11, and points can be lost, for example, for a prior conviction or parole violation.

against an early review hearing. The Commission's Notice of Action statement of reasons for its decision, which Shahid alleges to be inadequate, recited as follows:

> Your offense behavior has been rated as very high severity. You have a salient factor score of 7. You have been in custody a total of 20 months. Guidelines established by the Commission for adult cases which consider the above factors indicate a range of 36–45 months to be served before release for cases with good institutional program performance and adjustment. After review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted.

*Id.* at 31. After exhausting his administrative appeals, Shahid instituted this action in district court under 28 U.S.C. § 2241 (1976).

In an opinion reported at 430 F.Supp. 126 (M.D.Ala.1977), the district court found that the Commission had abused its discretion in denying parole to this prisoner and had failed to state with sufficient particularity its reasons for denying parole. In the court's view, the purpose of 18 U.S.C. § 4205(b)(2) is to permit the imposition of a substantial sentence with the possibility of early parole if the defendant behaves himself in prison. Thus, the opinion proceeds, when a trial judge pronounces a (b)(2) sentence, he expects that if the defendant compiles a good institutional record he will be seriously considered for parole before serving one-third of his sentence even though his prior criminal record and the seriousness of the offense for which he is being sentenced might argue against early parole. Reasoning from this premise, the court below held that the Commission abuses its

discretion if it fails to give serious consideration to a (b)(2) inmate's post-sentence behavior in deciding whether to grant parole. Since the record indicated to the court that Shahid was denied parole solely for reasons known to the trial judge at the time of sentencing, the Commission has, in the court's view, subverted the purpose of a (b)(2) sentence and frustrated the sentencing court's expectations.

The opinion granting the petition also found that the written statement of reasons in Shahid's case does not meet the requirement of 18 U.S.C. § 4206(b) that the Commission "state with particularity" its reasons for denying parole and that it is further deficient for failing specifically to reflect consideration of the information enumerated in 18 U.S.C. § 4207 (1976).[3] Accordingly, the court gave the Commission 60 days to provide reasons why Shahid should not be paroled. The writ issued upon the Commission's failure to do so.

## II

■ On this appeal, the Government argues that section 4205(b)(2) does not require early release of a prisoner with superior institutional adjustment as the district court's opinion implies. We agree. The history and purpose of the indeterminate sentence statute has been examined in detail elsewhere. *See Grasso v. Norton,* 520 F.2d 27, 32–33 (2d Cir. 1975); *Garafola v. Benson,* 505 F.2d 1212, 1216–18 (7th Cir. 1974). We can agree with the conclusion of those courts and the court below that a purpose of section 4205(b)(2) is to permit the sentencing judge to give the Commission the discretion to grant parole before the defendant has served one-third of his

---

**3.** This section provides:

> In making a determination under this chapter (relating to release on parole) the Commission shall consider, if available and relevant:
>> (1) reports and recommendations which the staff of the facility in which such prisoner is confined may make;
>> (2) official reports of the prisoner's prior criminal record, including a report or record of earlier probation and parole experiences;

>> (3) presentence investigation reports;
>> (4) recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge; and
>> (5) reports of physical, mental, or psychiatric examination of the offender.
> There shall also be taken into consideration such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may be reasonably available.

sentence. It does not follow, however, that the Commission abuses its discretion if it denies parole on the basis of facts known at the time of sentencing. The Supreme Court has made clear the division of responsibilities between the sentencing court and the Commission intended by Congress. "The trial court may set a defendant's eligibility for parole at any point up to one-third of the maximum sentence imposed, see 18 U.S.C. § 4205(a), (b) (1976) . . . . Whether the defendant will actually be paroled at that time is the decision of the Parole Commission." *United States v. Addonizio,* —— U.S. ——, —— n. 15, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 816 (1979).

> The [sentencing] judge has no enforcible expectations with respect to the actual release of a sentenced defendant short of his statutory term. The judge may well have expectations as to when release is likely. But the actual decision is not his to make, either at the time of sentencing or later if his expectations are not met.

*Id.* at ——, 99 S.Ct. at 2242.

In *Addonizio,* the Court expressly declined to rule on the validity of the Commission's actions in denying parole, but implicit in the decision is the principle that limitations on the Commission's exercise of its discretion derive from its governing statute, not the actions or expectations of the sentencing court. We turn then to an examination of those statutes.

The Commission's discretion is indeed broad. It is mandated to consider "the nature and circumstances of the offense and the history and characteristics of the prisoner." 18 U.S.C. § 4206(a). Upon consideration of the information identified in 18 U.S.C. § 4207, see note 3 *supra*, and "pursuant to guidelines established by the Commission," the parole decision must be based on determinations "(1) that release would not depreciate the seriousness of [the] offense or promote disrespect for the law; and (2) that release would not jeopardize the public welfare." *Id.* § 4206(a).[4] No different treatment is accorded prisoners serving (b)(2) sentences as opposed to straight time or an 18 U.S.C. § 4205(b)(1) sentence. The legislative history reveals that this was intentional.

> [T]he standards and criteria [for parole release] are made the same for all federal prisoners without regard to which of the three main sentencing alternatives is utilized by the court. This will be of significant benefit to the federal correctional institutions because offenders sentenced

---

4. The full text of section 4206 provides:

§ 4206. *Parole determination criteria*

(a) If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:

(1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and

(2) that release would not jeopardize the public welfare;

subject to the provisions of subsections (b) and (c) of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released.

(b) The Commission shall furnish the eligible prisoner with a written notice of its determination not later than twenty-one days, excluding holidays, after the date of the parole determination proceeding. If parole is denied such notice shall state with particularity the reasons for such denial.

(c) The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: *Provided,* That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.

(d) Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier: *Provided, however,* That the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime.

for similar crimes under similar circumstances will be required to serve comparable periods of incarceration.

S.Rep.No.94–369, 94th Cong., 2d Sess. 18 (1975), *reprinted in* [1976] U.S.Code Cong. & Admin.News pp. 335, 340.

The record in this case reveals that the hearing examiners who heard Shahid's case were aware that the staff considered him a model prisoner. The Hearing Summary for his second hearing specifically directs attention to the glowing progress report prepared by his caseworker. Record at 188. A majority of the examiners nevertheless decided that because a prior conviction and incarceration had not persuaded Shahid to live within the law and because he had committed his present offense while on state parole for another drug offense, he should remain in prison for the time indicated by the guidelines. It is particularly significant to note that the Commission's regulations provide that good institutional adjustment and program progress are a prerequisite for consideration within the guidelines. 28 C.F.R. § 2.20 (1978). Shahid must argue then that his prison behavior was so superlative that he was entitled to parole as a matter of law. But Congress intended the Commission, not the courts, to decide what significance should be accorded particular facts about particular prisoners. "The Conferees are in complete agreement with the Fifth Circuit holding in *Scarpa v. U. S. Board of Parole*, 477 F.2d [278] 281 (1973), vacated as moot, 414 U.S. 809 [94 S.Ct. 79, 38 L.Ed.2d 44], that the weight assigned to individual factors (in parole decision making) is solely within the province of the (commission's) broad discretion."

H.R.Conf.Rep.No.94–838, 94th Cong., 2d Sess. 28 (1976) (Joint Explanatory Statement of the Committee of Conference), *reprinted in* [1976] U.S.Code Cong. & Admin. News pp. 351, 360. There is here simply no evidence of the flagrant, unwarranted or unauthorized action that our cases require before the merits of a parole decision may be reviewed. *See United States v. Norton*, 539 F.2d 1082, 1083 (5th Cir. 1976) (per curiam) (quoting *Scarpa v. United States Board of Parole*), cert. denied, 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1977); *Brown v. Lundgren*, 528 F.2d 1050, 1054 (5th Cir.), cert. denied, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976).

III

■ Read more narrowly, the district court's opinion holds only that the Commission should have given a fuller written explanation of its reasons for denying parole. The court appeared to rely heavily on the D.C. Circuit's decision in *Childs v. United States Board of Parole*, 167 U.S.App.D.C. 268, 511 F.2d 1270 (1974), in assessing the sufficiency of the Notice of Action. This was error. *Childs* was a due process based decision. The Supreme Court has now confirmed the position we took in *Brown v. Lundgren*, 528 F.2d 1050, 1052–53 (5th Cir.), cert. denied, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976), that denial of parole release is not to be judged by due process standards. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, —— U.S. ——, 99 S.Ct. 2100, 2104–05, 60 L.Ed.2d 668 (1979).[5] Thus, the only issue here is whether the Commission has com-

5. *Greenholtz* held that the mere possibility of parole is not a constitutionally protected liberty interest, but that Nebraska had by statute created a protected expectation that parole would be granted unless one of four designated reasons to deny parole existed. The Court emphasized that the statute was unique and that whether due process would be required under other parole statutes would have to be determined on a case by case basis. The federal parole statute is quite different from Nebraska's. Parole is expressly made dependent on the judgment of the Commission that specified criteria have been met. *See* 18 U.S.C. § 4206(a). Only after a prisoner has served two-thirds of a sentence of five years or more, or thirty years of a sentence of forty-five years or more, does he have what might be considered a presumptive right to parole absent a finding that a statutorily stipulated justification for denial exists. Shahid has not served two-thirds of his sentence. We therefore leave for another day the determination of what expectation of parole is created by this statutory scheme and, if one is created, the extent to which the procedural protections provided comply with the requirements of due process.

plied with the statutory direction to "state with particularity" its reasons for denying parole. See 18 U.S.C. § 4206(b).

The Senate report on the bill which became the Parole Commission and Reorganization Act speaks directly to the intent of the particularity standard:

> The Committee does not wish to tie the hands of the Parole Commission by specifying a particular format for [the] statement of reasons. A formal judicial fact-finding is not required, but the inmate must receive an understandable explanation of his parole status. For example, under the published rules of the U.S. Board of Parole, 28 CFR 2.20 (1975 Vol. as amended), the Board utilizes a set of guidelines for parole release determinations. The guidelines take into consideration certain primary elements in the parole decision-making process and indicate, for any individual combination thereof, the general range of time to be served before release.

> The subsection would operate in the following manner in relation to the present guidelines system. If a prisoner who has not served the minimum period recommended by the guidelines is denied parole, he should receive a statement containing his severity of offense rating, the calculation of his salient factors score and an explanation of how such a determination utilizing the guidelines was reached. On the other hand, if a prisoner who has served the time required to be eligible for parole under the guidelines is denied parole and this denial results in delaying his release beyond the time period recommended by the guidelines, he should receive not only the above information but also a specific explanation of the factors which caused the Commission to reach a determination outside the guidelines. Parole Form R–2, Notice of Action Worksheet (revised June, 1974), which was implemented by the U.S. Parole Board in the northeast region on April 1, 1974, provides the necessary information.

S.Rep.No.94–369, 94th Cong., 2d Sess. 24–25 (1975), *reprinted in* [1976] U.S.Code Cong. & Admin.News pp. 335, 346.

■ At his second hearing, Shahid was a prisoner who had not served the minimum time recommended by the guidelines and who was denied parole. His Notice of Action sets forth the severity of his offense and his salient factor score. At his first parole hearing Shahid had received a salient factor score sheet showing how his score had been calculated. The Notice of Action also explained that no reason had been found to depart from the guidelines. The statement of reasons was prepared from a Notice of Action Worksheet,[6] Record at 182, which the House report specifically endorses. While it might be better practice in cases such as this, where the prisoner's offense is not specifically listed in the guidelines offense severity table, *see* 28 C.F.R. § 2.20 (1978), for the Commission to explain the severity rating in the Notice of Action,[7] we think the Commission has substantially complied with the intent of Congress in this case. Shahid's Notice of Action provides "an understandable explanation of his parole status," S.Rep.No.94–369, *supra, i. e.,* that he will be paroled according to the guidelines. Moreover, Shahid cannot claim any prejudice in this regard in view of the fact that the Summary of his first hearing

---

**6.** The Notice of Action Worksheet lists sets of standard form statements of reasons which can be selected by the hearing examiner for the typist to enter on the Notice of Action that goes to the inmate. Different sets or combinations of sets of reasons are provided according to whether the parole decision is within or outside the guidelines or whether the prisoner's offense severity rating is "greatest" or something less than that. Blanks are left to fill in the severity of offense, the salient factor score, the number of months served and the indicated range of confinement. Space is provided for the examiner to write in additional explanatory material if the decision is outside the guidelines; but no space is provided for further explanation if the decision is within the guidelines. We agree with the Government that the use of standard form reasons is permissible provided they are tailored to individual cases by giving the severity rating and salient factor score.

**7.** Space is provided in the Notice of Action Worksheet, see note 6 *supra*, for further explanation of the severity rating.

shows that his severity-of-offense rating was carefully explained to him orally at that time. Record at 187. Parole Commission statements of reasons substantially similar to the one challenged here have previously been upheld as sufficient under standards of due process and the Administrative Procedure Act. *E. g., Fronczak v. Warden, El Reno Reformatory,* 553 F.2d 1219 (10th Cir. 1977) (per curiam). We now hold that this statement complies with the "particularity" requirement of the statute.[8]

## IV

■■ The district court also found merit in Shahid's contention that his offense was improperly categorized as "very high" rather than "high" severity. Under the guidelines, this resulted in setting a range of confinement of 36 to 45 months rather than a range of 20 to 26 months. *See* 28 C.F.R. § 2.20 (1978). The district court apparently accepted Shahid's argument under *Robinson v. United States Board of Parole,* 403 F.Supp. 638, 640 (W.D.N.Y.1975), that the Commission cannot, after the fact, justify a severity rating by offering reasons not given at the time parole was denied.

Even if *Robinson* states a correct principle, however, it is not applicable here. The undisputed record reveals that Shahid was told at his first hearing that his offense had been rated very high severity because he had been convicted of multiple crimes. There is thus no question of after-the-fact justification in this case. The Commission acted within the guidelines and did not abuse its discretion.[9] *See Payne v. United States,* 539 F.2d 443, 444 (5th Cir. 1976) (per curiam), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1131, 51 L.Ed.2d 554 (1977); *Brown v. Lundgren,* 528 F.2d 1050, 1055 (5th Cir.), *cert. denied,* 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976).

## V

No ground has been shown to support the district court's grant of the writ. The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

**8.** The district court referred to *McGee v. Aaron,* 523 F.2d 825 (7th Cir. 1975), and *deVyver v. Warden, U. S. Penitentiary,* 388 F.Supp. 1213, 1218 (M.D.Pa.1974), for examples of statements of reasons it considered adequate. These cases merely hold that the reasons given were sufficient under the circumstances. They do not purport to set a minimum standard of adequacy.

**9.** This disposes of the district court's finding that the Commission violated 18 U.S.C. § 4206(c) by not providing a summary of the information it relied upon. Such a summary is required only when the action taken is outside the guidelines.