**Kenneth L. PAYTON, Petitioner,**

v.

**Dale THOMAS, Warden Metropolitan Correctional Center, and the United States Parole Commission, Respondents.**

**No. 79 Civ. 4921.**

United States District Court,
S. D. New York.

Feb. 6, 1980.

---

Kenneth L. Payton, pro se.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, for respondents; Susan Millington Campbell, Asst. U. S. Atty., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Petitioner, while confined to the Federal Correctional Institution at Tallahassee, Florida, instituted in the Northern District of Florida, Tallahassee Division, a habeas corpus proceeding in December 1978 ("December 1978 petition") pursuant to 28 U.S.C., section 2241, seeking his release. The application was based upon actions taken or omitted by the United States Parole Commission in connection with his initial parole hearing. His confinement was pursuant to a judgment of conviction entered upon his plea of guilty to a charge of attempted bank robbery, 18 U.S.C., section 2113(a), in the Eastern District of New York. He was sentenced on July 7, 1977 to an eight-year term under the Youth Corrections Act, 18 U.S.C., section 5010(c), which on September 12, 1977 was reduced to six years pursuant to 18 U.S.C., section 5010(b).

During the pendency of his December 1978 petition it appeared that in connection with other matters petitioner was confined to the Metropolitan Correctional Center ("MCC") within this district, whereupon at his request the proceeding was transferred to this district. Since then he has filed additional documents to further support his original petition and to expand his claims to include a challenge to a denial of parole following a second hearing conducted at the MCC on September 26, 1979.[1]

■ In his December 1978 petition he alleges he was denied due process of law and subjected to cruel and unusual punishment because (1) a parole hearing held on April 14, 1978 was untimely; (2) he was not provided with adequate notice of his right to disclosure information used by the Commission at his hearing; (3) the Commission used erroneous and misleading information in making its decision; and (4) the Commission acted in an arbitrary and capricious manner when it denied him parole at the April 14, 1978 hearing, in failing to adhere to the legislative intent of a Federal Youth Corrections sentence.

Even assuming the verity of petitioner's claims, neither singly nor collectively do they support a charge of violation of federally protected rights so as to mandate his release.

■ Petitioner first charges that he was denied a prompt parole hearing. His sentence commenced on July 28, 1977;[2] he was not received at the Tallahassee Correctional Institution until March 14, 1978. During the intervening period he was confined to federal or state installations in the New York metropolitan area, principally at either the Bergen County jail, Hackensack, New Jersey, or at the MCC, New York City, because he was then cooperating with law enforcement authorities and his presence within the area of this district was required in connection with such activities and the likelihood of his appearance as a witness in various matters.

18 U.S.C., section 5014, mandates that every youth offender first be sent to a classification center where a complete study of him is to be made, which in the absence of "exceptional circumstances" shall be completed within thirty days. The center is to report its findings and recommendations as to treatment to the Director of the Bureau of Prisons and to the Parole Commission, and "[a]s soon as practicable after

---

1. The additional documents are (1) Petitioner's Answer to Respondents' Response (to his December 1978 petition); (2) Motion to Expedite Procedure; (3) Motion to File Supplemental (habeas) Petition or Original Petition; (4) Motion for Expansion of Record; and (5) Motion for Grant of Bail.

2. Petitioner was sentenced on July 7, 1977, but was given a 21-day stay and surrendered to serve his sentence on July 28, 1977.

commitment, the youth offender shall receive a parole interview." While section 5014 does not set forth the outer limits of the term "as soon as practicable," the legislative history indicates that the parole procedures referred to therein are to parallel those that are applicable to prisoners who are eligible for immediate parole under 18 U.S.C., section 4205(b)(2).[3] Thus, section 4208(a) provides: "*Whenever feasible*, the initial parole determination proceeding for a prisoner eligible for parole pursuant to subsection (b)(2) of section 4205 . . . shall be held not later than one hundred and twenty days following such prisoner's imprisonment . . . in a Federal institution . . . ." (Emphasis supplied.) By measuring the time for the initial hearing from the date the youth offender is imprisoned at the federal institution, it is clear that the statute contemplated the place to which he is committed for treatment and that no hearing was required prior to his arrival at that institution. As the Supreme Court observed:

> An integral part of the treatment program was the segregation of the committed persons, insofar as practicable, so as to place them with those similarly committed, to avoid the influence of association with the more hardened inmates serving traditional criminal sentences. 18 U.S.C. § 5011.[4]

In the instance of petitioner that place was Tallahassee, not the Bergen County jail located in New Jersey. The Bergen County jail, a holding facility where petitioner was principally confined (evidently for his own safety) during the period he was cooperating with enforcement authorities, was not a classification center or agency equipped to make the "complete study" required of each offender. Clearly petitioner's situation during such confinement was one of "exceptional circumstances" which justified the classification study going beyond the thirty-day period. The fact is that following peti-

tioner's receipt at Tallahassee, the correctional institution to which he was sent for treatment, a classification study was prepared within thirty days and was considered at his hearing which was conducted on April 14, 1977. Thus his initial parole interview was not only held "as soon as practicable," but less than thirty days after his confinement at Tallahassee, and well within the 120 days specified in section 4208(a). The claim that he was denied a prompt hearing is without substance.

Petitioner, somewhat inconsistently with his claim that he was denied a prompt parole hearing, in his reply to the Commission's response argues that the Tallahassee Institution officials "could not have conducted a thorough evaluation study . . . in just thirty days" and complains that because he was not given more notice of his parole hearing he was deprived of the opportunity to disprove untrue information and reports which would have entitled him to score a higher number of salient points. But, as already noted, he was given his hearing on April 14, 1977 within thirty days after he was received at Tallahassee and had the full opportunity to present whatever information he desired.

Petitioner next contends that he was not provided with adequate notice of his right to disclosure information used by the Commission at his hearing. This claim also fails since he signed a waiver of this right as authorized by section 4208(a).[5] Moreover, even were his contention valid, there has been no showing of prejudice. Following the hearing and pursuant to his request he was provided with a tape recording of the hearing information and was able to and did present to the Parole Commission by way of his regional and national appeals his allegations of erroneous information. Thus there is no substance to his claim that he was injured because of delay either in the timing of his hearing and in the alleged

---

3. [1976] U.S.Code Cong. & Admin.News, pp. 335, 369.

4. *Dorszynski v. United States*, 418 U.S. 424, 434, 94 S.Ct. 3042, 3048, 41 L.Ed.2d 855 (1974).

5. *Cf. Leftwich v. Jett*, 453 F.Supp. 879 (C.D.Cal. 1978).

failure to make prompt disclosure of his file.

■ With respect to his claim that the Commission used erroneous information, he charges that the Commission was misinformed (1) that his conviction was for bank robbery and that he was sentenced to an eight-year term whereas, in fact his conviction upon his guilty plea was for attempted robbery and his sentence had been reduced to a term of from four to six years; (2) about his prior employment; (3) about his place of residence; and (4) about his offense behavior. The alleged misinformation of which petitioner complains is set forth in his presentence report with the exception of the sentence reduction information that is contained in the order of reduction of sentence entered on September 12, 1977. These are part of the record and the Parole Commission is mandated to consider the presentence report[6] and it has broad discretion to weigh, evaluate and pass upon the credibility of such reports and all other pertinent data.[7] It is not the function of the courts to review the credibility of the reports and information considered by the Commission in exercising its discretion.[8] The order of reduction indicates that petitioner himself is in error when he charges that the Commission was under a misapprehension that his original eight-year sentence was in effect and had not been reduced. The hearing summary of April 14, 1978 in the very opening sentence contains a specific reference to the reduction of the sentence. It is true that the same summary erroneously states that petitioner was convicted of bank robbery whereas, as already noted, he pled guilty to and was convicted of attempted bank robbery. But this error was corrected on petitioner's national appeal. Moreover, the error was not to his prejudice. Petitioner failed to present evidence either at his parole hearing or his

Regional National Appeal that the information contained in the presentence report as to his employment history and residence were not correct; and even if he had it was the Commission which had the power to evaluate its verity.

■ With respect to the offense severity the Commission's procedures manual requires that in applying the guidelines, the rating shall reflect the overall circumstances of present offense behavior. In short, the conviction offense is not considered in isolation; the Commission has discretion to consider offense behavior beyond the offense of conviction. Here the presentence report noted and the Commission found that the total offense behavior included participation in five bank robberies with the use of firearms, in one of which a weapon was discharged. Petitioner admitted involvement in the offenses. The Commission, no less than a sentencing judge, "is not limited to a consideration of only that criminal conduct of the defendant which related to the offense for which he was convicted, . . . [but] is, *a fortiori*, certainly entitled to be fully advised of the contents of the presentence report and to use it in giving an offense severity rating . . . ."[9] Furthermore, the law expressly requires the Commission, in making a determination for release on parole, to consider not only the presentence report, but also to take into account "such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may be reasonably available."[10] Clearly, therefore, the Commission acted well within its discretion in considering all such relevant data. The Commission, after consideration of his offense behavior and other relevant factors for Youth Correction cases,[11] indicated a range of 78 + months to be served before release for cases with good institutional program performance and ad-

---

6. 18 U.S.C. § 4207(3).

7. Cf. *Billiteri v. United States Bd. of Parole*, 541 F.2d 938, 944–45 (2d Cir. 1976).

8. *Brest v. Ciccone*, 371 F.2d 981 (8th Cir. 1967).

9. *Billiteri v. United States Bd. of Parole*, 541 F.2d 938, 944 (2d Cir. 1976).

10. 18 U.S.C. § 4207.

11. 28 C.F.R. § 2.20.

justment; petitioner was continued until the expiration of his sentence with a statutory interim hearing to be held in October 1979, which hearing, as hereafter noted, has been held.

Finally, upon discursive allegations, at times not altogether clear, the petitioner contends that the Commission failed to adhere to the legislative intent of the Federal Youth Corrections Act. This claim must be viewed against the Parole Commission and Reorganization Act of 1976 ("PCRA").[12] Petitioner argues that since he was sentenced under the Federal Youth Corrections Act his release should be predicated upon considerations not only "of his offense, but also with his conduct and response to treatment." Thus he avers that his response to whatever treatment given had been excellent and that the Commission acted illegally "by continuing him to the expiration of his sentence without considering his institutional record and progress" and that "guidelines to the contrary must yield to the provisions of law." The short answer is that good institutional conduct is but one factor;[13] the parole guidelines apply to a prisoner's sentence under the Youth Corrections Act where, as in this case, the offense occurred after the enactment of PCRA.[14] The weight to be accorded particular facts pertaining to an individual prisoner rests within the Commission's sole and broad discretion.[15] Finally, even if error were found with respect to any one or all of petitioner's claims he would not be entitled to his release. His legal remedy is limited to a direction that he have a proper hearing.[16] Such a hearing was held on September 29, 1979 at the MCC, New York City. The Commission again determined that guidelines factors indicated a range of 76 or more months to be served before release for cases with good institutional program performance and adjustment and that upon a review of all relevant factors and information presented, a decision outside the guidelines was not warranted. Petitioner thereupon filed a supplemental petition in which he charges the Commission's failure to release him on parole reflects further failure to adhere to the intent of the sentencing court; that the institution's staff indicated petitioner had reached the peak of his rehabilitative stage and further for reasons of health he should be released immediately. The responsibility for decision as to parole release is entrusted by the Congress to the Parole Commission and not, as petitioner suggests, upon institutional case workers' recommendations or those of third parties. The decision by the Commission is a "mix" of many factors and no single consideration is conclusive. In any event, the discretion is that of the Commission. It has the sole power to grant or deny parole,[17] and as previously noted, PCRA guidelines are applicable to petitioner.[18] Petitioner's further claim that the Commission's determination fails to carry out the intent of the sentencing court is without substance since there is no enforceable right of a sentencing judge to effect a particular parole date.[19]

Finally, apart from the foregoing which requires dismissal of petitioner's application upon the merits, it appears that to date, although he has appealed to the Regional Commission pursuant to 18 U.S.C.,

---

12. 18 U.S.C. §§ 4201–4218 (1976).

13. *Shahid v. Crawford,* 599 F.2d 666, 670 (5th Cir. 1979). *Cf. Shepard v. Taylor,* 556 F.2d 648, 654 (2d Cir. 1977); *Grasso v. Norton,* 520 F.2d 27, 32–33 (2d Cir. 1975).

14. *Moore v. Nelson,* 611 F.2d 434 (2d Cir. 1979); *United States v. Jackson,* 550 F.2d 830, 832 (2d Cir. 1977); *Shepard v. Taylor,* 556 F.2d 648, 654 (2d Cir. 1977).

15. *Shahid v. Crawford,* 599 F.2d 666, 670 (5th Cir. 1979). *See also* [1976] U.S.Code Cong. & Admin.News, p. 360.

16. *Cf. Burton v. Ciccone,* 484 F.2d 1322 (8th Cir. 1973); *Smith v. United States,* 577 F.2d 1025 (5th Cir. 1978).

17. 18 U.S.C. § 4203(b)(1); *Billiteri v. United States Bd. of Parole,* 541 F.2d 938, 944 (2d Cir. 1976).

18. See footnote 14, *supra.*

19. *United States v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235, 2242, 60 L.Ed.2d 805 (1979).

section 4215(a) which affirmed the previous decision but modified the reasons, petitioner has not filed an appeal to the National Appeals Board as permitted by 18 U.S.C., section 4215(b) and, accordingly, he has failed to exhaust available administrative remedies.

Finally, petitioner's application for bail is denied.[20] Under the facts alleged there is neither constitutional nor statutory right to bail.[21]

So ordered.

---

20. Petitioner also sought the appointment of counsel. That motion was denied. His further motion to amend the original petition was granted by substituting "Dale Thomas, Warden of Metropolitan Correctional Center" in place of "David C. Lundgren, Warden Tallahassee Federal Correctional Institution."

21. *Galante v. Warden, Metropolitan Correctional Center,* 573 F.2d 707 (2d Cir. 1977).