Jerald CARMEL, Petitioner,

v.

Dale THOMAS, Warden, Metropolitan Correctional Center, Respondent.

No. 80 Civ. 4092–CSH.

United States District Court, S. D. New York.

March 23, 1981.

Jerald Carmel pro se.

Barbara L. Schulman, Asst. U. S. Atty., New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

### HAIGHT, District Judge:

Petitioner Jerald Carmel brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking his release from custody.[1] Specifically, Carmel challenges the action of the United States Parole Commission in revoking his parole in part on the basis of his convictions under the laws of France and Sweden. For the reasons stated, the petition is denied.

In a prior habeas corpus petition, Carmel asserted a denial of his due process rights arising from the Commission's failure to accord him a final parole revocation hearing within ninety days of his arrest on a parole violator warrant as required by 18 U.S.C. § 4214(c). Judge Weinfeld denied that petition, finding that much of the delay in scheduling the hearing was occasioned by Carmel's own request and, in any event, that he was unable to point to any specific prejudice flowing from the delay. *Carmel v. United States Parole Commission*, 489 F.Supp. 113, 115 (S.D.N.Y.), appeal dismissed, No. 80–2143 (2d Cir. July 11, 1980). The factual background is drawn from Judge Weinfeld's opinion and the pleadings in this action.

### I.

Carmel was convicted in the Eastern District of New York of bank robbery and was sentenced in July 1961 to a 15-year term of imprisonment. On August 21, 1972, he was released from federal custody to parole supervision with 2,455 days remaining on the original sentence. His parole was to terminate on May 12, 1979. However, on September 26, 1972, the Commission was advised by petitioner's probation officer that Carmel had absconded from supervision. On October 10, 1973 a parole violator warrant was issued charging Carmel with parole violations arising from his failure to submit supervision reports and for failure to report his change in residence. Subsequently, the Commission learned that Carmel had fled the country and had encountered further difficulties with law enforcement officers abroad. More particularly, the Commission was advised on March 14, 1975 that Carmel had been arrested in France on charges of possession of a firearm and forgery; later, the Commission learned that Carmel had been sentenced on those charges and had escaped from a French penitentiary. Further, the Commission was advised on March 17, 1977 that Carmel had been arrested in Sweden on fraud charges, which led to his conviction and eventual expulsion from that country.

The more recent history begins with Carmel's arrest on the parole violator warrant on August 4, 1979 as he entered the United States from Canada. On August 22, 1979, a preliminary interview was conducted by a United States probation officer in Albany, New York, pursuant to 18 U.S.C. § 4214(a),[2] during which Carmel, represented by an attorney, admitted the charges on which the warrant against him was based. On September 17, 1979, the Commission found probable cause to believe that Carmel had

---

1. As developed more fully in the text, Carmel filed the instant petition while he was incarcerated at the Metropolitan Correctional Center in New York City and, accordingly, he named Warden Dale Thomas as the respondent; subsequently, however, Carmel was transferred to another facility. For reasons of convenience, however, the caption of the petition will remain unchanged even though Warden Thomas is no longer Carmel's custodian.

2. Section 4214(a) provides in pertinent part:

"Except as provided in subsections (b) and (c), any alleged parole violator summoned or retaken under section 4213 shall be accorded the opportunity to have—

"(A) a preliminary hearing at or reasonably near the place of the alleged parole violation or arrest, without unnecessary delay, to determine if there is probable cause to believe that he has violated a condition of his parole; ..." 18 U.S.C. § 4214(a)(1)(A).

violated the conditions of his parole and requested pursuant to 28 C.F.R. § 2.49(c)[3] that he be designated to a federal institution for a final revocation proceeding. Carmel was sent to the United States Penitentiary at Lewisburg, Pennsylvania.

A revocation hearing was scheduled at Lewisburg for October 11, 1979 but Carmel requested and was granted a continuance until the December 1979 parole hearing docket. A hearing was scheduled for December 12, 1979 when it was determined that Carmel had been removed from the Lewisburg facility on a writ of habeas corpus ad testificandum. For reasons which remain unclear, the Commission was unaware of Carmel's whereabouts until March 5, 1980, when it was served with his first petition seeking his release from custody, then at the Metropolitan Correctional Center (the "MCC") in New York City. The Commission responded in part by scheduling a revocation hearing for March 26, 1980, at which time Carmel requested and was granted a further continuance for the purpose of obtaining counsel and procuring witnesses. In the interim, Judge Weinfeld denied Carmel's first petition which, as noted earlier, challenged the timeliness of the hearing.

Finally, a revocation hearing was held on May 29, 1980 at the MCC. The two-member hearing panel made formal findings of fact on the basis of Carmel's admissions to the examiner panel in March 1980 and the evidence developed before the hearing panel on May 29, 1980 that Carmel had violated the conditions of his release as charged originally, and in respect of the additional charges of leaving the district to which parole supervision had been transferred without permission and the convictions in France and Sweden. The hearing panel recommended that parole be revoked with credit for the time spent on parole from the date of his release from prison until July 6, 1973 when he absconded. The proceeding was referred to the Regional Commissioner for resolution of a split in the panel's recommendation regarding re-parole; one examiner recommended a continuance of the hearing pending collection of more precise information regarding the two foreign convictions and the other examiner, on the basis of the information already in the record, recommended a presumptive release date of May 24, 1982.

Upon review in the Regional Office pursuant to 28 C.F.R. § 2.23(c),[4] the Administrative Hearing Examiner reviewed the foregoing and voted to revoke Carmel's parole, to give Carmel credit for time under supervision from the date of his release until July 6, 1973, and to continue Carmel to a presumptive parole date on May 24, 1982. This became the recommendation of the panel and, with the Regional Commissioner's concurrence, the decision of the Commission pursuant to 28 C.F.R. § 2.23(d).[5] Carmel was so advised by three Notices of Action dated June 19, 1980.[6]

3. The regulation provides that:
"A parolee who voluntarily waives his right to a local revocation hearing, or who admits any violation of the conditions of his release, or who is retaken following conviction of a new crime, shall be given a revocation hearing upon his return to a Federal institution. However, the Regional Commissioner may, on his own motion, designate a case for a local revocation hearing." 28 C.F.R. § 2.49(c) (1979).

4. The regulation provides that:
"In the event of a divided recommendation by a panel, the regional Administrative Hearing Examiner shall vote. If the Administrative Hearing Examiner is serving as a member of a hearing examiner panel or is otherwise unavailable, cases requiring his action under this paragraph will be referred to another hearing examiner." 28 C.F.R. § 2.23(c) (1979).

5. That provision reads:
"A recommendation of a hearing examiner panel shall become an effective Commission decision upon review and docketing at the Regional Office, unless action is initiated by the Regional Commissioner pursuant to § 2.24." 28 C.F.R. § 2.23(d) (1979).

6. In one Notice of Action, Carmel was advised that he would be credited with time spent on parole from the date of his release until June 6, 1973, meaning to refer to the date on which he absconded. As noted in the text, the Commission had been advised that Carmel had left the supervising district on or about July 6, 1973. The error in the original Notice of Action was

Carmel filed this petition on July 17, 1980 while still incarcerated at the MCC. The petition asserts that his custody is unlawful due to the Commission's consideration of his two foreign convictions in its determination to revoke his parole and establish a presumptive parole date. An application praying for an order restraining officials of the Bureau of Prisons from transferring Carmel to another institution pending the determination of the instant petition was denied in a Memorandum Opinion and Order dated September 26, 1980 and Carmel was transferred back to the United States Penitentiary at Lewisburg.

The respondent does not contest this Court's jurisdiction of the petition; nor could he, since "the passing about of the body of a prisoner from one custodian to another after a writ of habeas corpus has been applied for [does not] defeat the jurisdiction of the court to grant or refuse the writ on the merits of the application." *Ex parte Catanzaro*, 138 F.2d 100, 101 (3d Cir. 1943), *cert. denied*, 321 U.S. 793, 64 S.Ct. 789, 88 L.Ed. 1083 (1944); *Smith v. Campbell*, 450 F.2d 829, 832–33 (9th Cir. 1971). The Government does contend, however, that the petition should be dismissed for Carmel's failure to exhaust his administrative remedies and, alternatively, on the ground that the Commission's decision did not violate Carmel's constitutional rights or abuse its discretion. These contentions are considered in turn.

## II.

It is settled law that a petitioner seeking a writ of habeas corpus must exhaust available administrative remedies as a prerequisite to habeas relief. *E.g., Guida v. Nelson*, 603 F.2d 261, 262 (2d Cir. 1979); *Lambert v. Warden*, 591 F.2d 4, 8 (5th Cir. 1979); *United States ex rel. Sanders v. Arnold*, 535 F.2d 848, 851 (3d Cir. 1976); *Willis v. Ciccone*, 506 F.2d 1011, 1015 (8th Cir. 1974). An aggrieved parolee can seek reconsideration of an adverse parole determination such as modification or revocation of parole by written application to the appropriate regional commissioner not later than thirty days after the decision is rendered, 18 U.S.C. § 4215(a);[7] following an adverse determination thereon, an appeal lies to the National Appeals Board pursuant to 18 U.S.C. § 4215(b).[8] *See also* 28 C.F.R. §§ 2.25 and 2.26.[9] Carmel has pursued neither level of review according to the Commission's file. Affidavit of Michael J. Santella, sworn to August 26, 1980 ("Santella Affidavit"), at ¶ 13. In these circumstances, the petition is subject to dismissal for failure to exhaust available administrative remedies.

rectified in a corrected Notice of Action, transmitted to Carmel on August 26, 1980. Santella Affidavit, ¶ 16 and Ex. K.

7. The statute provides in pertinent part as follows:

"Whenever . . . parole is modified or revoked under section 4214, the individual to whom any such decision applies may have the decision reconsidered by submitting a written application to the regional commissioner not later than thirty days following the date on which the decision is rendered." 18 U.S.C. § 4215(a).

8. The statute provides in pertinent part:

"Any decision made pursuant to subsection (a) of this section which is adverse to the applicant for reconsideration may be appealed by such individual to the National Appeals Board by submitting a written notice of appeal not later than thirty days following the date on which such decision is rendered." 18 U.S.C. § 4215(b).

9. The regulations provide in pertinent part that:

"A prisoner or parolee may submit to the responsible Regional Commissioner a written appeal of a decision to grant, rescind, deny, or revoke parole. . . . This appeal must be filed on a form provided for that purpose within thirty days from the date of entry of such decision." 28 C.F.R. § 2.25(a) (1979). "Within 30 days of entry of a Regional Commissioner's decision under § 2.25, a prisoner or parolee may appeal to the National Appeals Board on a form provided for that purpose. However, any matter not raised on a regional level appeal may not be raised on appeal to the National Appeals Board. The National Appeals Board may, upon the concurrence of two members, affirm, modify, or reverse the decision, or order a rehearing at the institutional or regional level." 28 C.F.R. § 2.26(a) (1979).

### III.

In the alternative, I find that the petitioner has failed to demonstrate that the Commission's action violated his constitutional rights or that the Commission abused its discretion in considering his foreign convictions for the purpose of revoking his parole and establishing a presumptive release date. *See generally Billiteri v. United States*, 541 F.2d 938, 944 (2d Cir. 1976).

In determining whether to revoke parole, "all that is required is that the evidence and facts reasonably demonstrate that the person's conduct has not been as good as required by the terms and conditions of the release." *Mack v. McCune*, 551 F.2d 251, 254 (10th Cir. 1977). The Commission is "vested with the broadest discretion consistent with due process to act upon reliable evidence in revoking parole." *United States ex rel. Sperling v. Fitzpatrick*, 426 F.2d 1161, 1163 (2d Cir. 1970). *See also, United States ex rel. De Fillo v. Fitzpatrick*, 378 F.2d 85, 87 (2d Cir. 1967) ("[T]he test is not whether there was substantial evidence to support the Board's decision revoking his release, but whether, as a matter of law, the revocation on its face appears to be without any support. If the process requirements of the statute have been observed and there has been a violation of parole 'the effect of [the Board's] action of revocation cannot be touched' and the defendant is not entitled to release from such custody through a writ of habeas corpus") (citations omitted); *Hyser v. Reed*, 318 F.2d 225, 234 (D.C.Cir.) (Burger, J.), *cert. denied*, 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315 (1963) ("Congress has granted the [Commission] power to revoke a conditional release upon determining that a condition of the parole has been violated") (footnote omitted). Indeed, the Commission's wide discretion includes the authority to deviate from the Parole Regulations, 28 C.F.R. § 2.1 *et seq.*, as long as its decision is reasonable and appropriate in the circumstances. *Mayo v. Sigler*, 428 F.Supp. 1343, 1348 (N.D.Ga. 1977).

The Commission is authorized by statute to fix appropriate terms and conditions of parole. 18 U.S.C. § 4209.[10] The Commission has promulgated standard parole conditions, *see* 28 C.F.R. § 2.40(a)(1)–(11),[11] which

---

**10.** That section provides in pertinent part as follows:

"In every case, the Commission shall impose as a condition of parole that the parolee not *commit another* Federal, State, or local crime. The Commission may impose or modify other conditions of parole to the extent that such conditions are reasonably related to—

"(1) the nature and circumstances of the offense; and

"(2) the history and characteristics of the parolee;

and may provide for such supervision and other limitations as are reasonable to protect the public welfare." 18 U.S.C. § 4209(a).

**11.** The Commission's regulations provide that:

"The conditions of release are printed on the release certificate and are binding regardless of whether the parolee signs the certificate. The following conditions are deemed necessary to provide adequate supervision and to protect the public welfare:

"(1) The parolee shall go directly to the district named in the certificate (unless released to the custody of other authorities). Within three days after his arrival, he shall report to his parole adviser, if he has one, and to the United States Probation Officer whose name appears on the certificate. If in any emergency the parolee is unable to get in touch with his parole adviser or his probation officer or his office, he shall communicate with the United States Parole Commission, Washington, D.C. 20537.

"(2) If the parolee is released to the custody of other authorities, and after release from the physical custody of such authorities, he is unable to report to the United States Probation Officer to whom he is assigned within three days, he shall report instead to the nearest United States Probation Officer.

"(3) The parolee shall not leave the limits fixed by his certificate of parole without written permission from the probation officer.

"(4) The parolee shall notify his probation officer within two days of any change in his place of residence.

"(5) The parolee shall make a complete and truthful written report (on a form provided for that purpose) to his probation officer between the first and third day of each month, and on the final day of parole. He shall also report to his probation officer at other times as the probation officer directs.

"(6) The parolee shall not violate any law, nor shall he associate with persons engaged in criminal activity. The parolee shall get in touch within two days with his probation officer or office if he is arrested or questioned by a law-enforcement officer.

are printed on the release certificate itself. Carmel's Certificate of Parole provides in pertinent part:

"3. You shall not leave the limits fixed by this CERTIFICATE OF PAROLE without written permission from the probation officer.

"4. You shall notify your probation officer immediately of any change in your place of residence.

"5. You shall make a complete and truthful written report (on a form provided for that purpose) to your probation officer between the first and third day of each month, and on the final day of parole. You shall also report to your probation officer at other times as he directs.

"6. You shall not violate any law. Nor shall you associate with persons engaged in criminal activity. You shall get in touch immediately with your probation officer or his office if you are arrested or questioned by a law enforcement officer."

Santella Affidavit, Ex. A. *See* 28 C.F.R. § 2.40(a)(3)–(6).

There can be no serious doubt that each of the five charges laid against Carmel in the revocation proceeding would, if proved, constitute violations of the foregoing terms and conditions of parole. Significantly, Carmel does not dispute the sufficiency of the evidence which the Commission relied upon to sustain the charges. Moreover, no challenge is laid with respect to the charges

of leaving the supervising district without permission, failure to report changes in address and failure to submit monthly reports as required, violations of the third, fourth and fifth conditions of Carmel's parole, respectively, each of which could independently support the Commission's determination to revoke parole. Thus, the only issue presented by the petition is whether the Commission abused its discretion or violated Carmel's constitutional rights in considering the fourth and fifth charges of parole violation, *i.e.*, his convictions under the laws of foreign sovereigns. Carmel attacks the Commission's use of his foreign convictions as "arbitrary, capricious and unlawful," claiming that "the Petitioner did not violate any Federal, State or local laws," and asserting that "the Parole Commission has no right to judge the laws of a foreign country where what would be considered a crime in Europe as to the laws of the United States." Petition at 5. These claims are without merit.

■ Congress has mandated that the Commission consider a wide range of factors in making determinations relating to release on parole; in addition to staff recommendations, and official reports of a prisoner's prior criminal record, presentence investigations and physical, mental or psychiatric examinations, the governing statute expressly requires the Commission take into account "such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may be reasonably available." 18 U.S.C.

"(7) The parolee shall not enter into any agreement to act as an informer or special agent for any law-enforcement agency.

"(8) The parolee shall work regularly unless excused by his probation officer, and support his legal dependents, if any, to the best of his ability. He shall report within two days to his probation officer any changes in employment.

"(9) The parolee shall not drink alcoholic beverages to excess. He shall not purchase, possess, use, or administer marihuana or narcotic or other habit-forming drugs, unless

prescribed or advised by a physician. The parolee shall not frequent places where such drugs are illegally sold, dispensed, used, or given away.

"(10) The parolee shall not associate with persons who have a criminal record unless he has permission of his probation officer.

"(11) The parolee shall not have firearms (or other dangerous weapons) in his possession without the written permission of his probation officer, following prior approval of the United States Parole Commission." 28 C.F.R. § 2.40(a) (1979).

§ 4207.[12] *Payton v. Thomas,* 486 F.Supp. 64, 68 (S.D.N.Y.1980). Any information which can inform the Commission's decision and which it finds "helpful" may be considered. *United States ex rel. Goldberg v. Warden,* 622 F.2d 60, 63 (3d Cir. 1980). Indeed, the Commission is concerned "with all facets of a prisoner's character, make-up and behavior . . ." *Billiteri v. United States Board of Parole, supra,* 541 F.2d at 944. Determining the relevance and weight to be accorded these myriad factors is placed " 'solely within the province of the [Commission's] broad discretion.' " *Richards v. Crawford,* 437 F.Supp. 453, 455 (D.Conn. 1977) (Newman, J.) (citation omitted).

■ In addition to these pronouncements respecting the Commission's authority and, indeed, obligation to consider any relevant information in making parole determinations, the Commission's consideration of Carmel's foreign convictions is supported by the sixth condition of his parole:

"You shall not violate *any law.* Nor shall you associate with persons engaged in criminal activity. You shall get in touch immediately with your probation officer or his office if you are arrested or questioned by a law enforcement officer." Santella Affidavit, Ex. A (emphasis added).

As noted hereinabove, the Commission had been advised in 1975 and 1977, respectively of Carmel's French and Swedish convictions, information which Carmel himself confirmed in the course of both the preliminary interview and revocation hearing. The Commission was clearly entitled to consider this material as "additional relevant information concerning the prisoner (including information submitted by the prisoner)," 18 U.S.C. § 4207, and to find, on the basis of all the evidence before it, that Carmel had violated the condition of his parole respecting violations of "any law." Certainly nothing in the relevant statutes and regulations expressly limits the Commission's considerations to domestic law violations. The reference in the regulations to "any law" is unqualified as to sovereignty. Although the statute requires the Commission to impose, at the minimum, as a condition of parole that a parolee remain free of violations of Federal, state or local law, see 18 U.S.C. § 4209,[13] it also authorizes the imposition of "other conditions of parole to the extent that such conditions are reasonably related to (1) the nature and circumstances of the offense; and (2) the history and characteristics of the parolee . . ." 18 U.S.C. § 4209(a). The imposition of a stricture against violating "any law" meets these tests and is "sufficiently specific to serve as a guide to supervision and conduct." *See* 18 U.S.C. § 4209(b).[14]

■ Significantly, although the Commission's own Procedures Manual precludes the use of a foreign conviction in calculating forfeited "street time," *see* 18 U.S.C. § 4210(b)(2),[15] the Manual does provide that

---

12. The statute provides:
"In making a determination under this chapter (relating to release on parole) the Commission shall consider, if available and relevant:
"(1) reports and recommendations which the staff of the facility in which such prisoner is confined may make;
"(2) official reports of the prisoner's prior criminal record, including a report or record of earlier probation and parole experiences;
"(3) presentence investigation reports;
"(4) recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge; and
"(5) reports of physical, mental, or psychiatric examination of the offender.
"There shall also be taken into consideration such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may be reasonably available." 18 U.S.C. § 4207.

13. See note 10, *supra.*

14. Section 4209(b) provides:
"The conditions of parole should be sufficiently specific to serve as a guide to supervision and conduct, and upon release on parole the parolee shall be given a certificate setting forth the conditions of his parole. An effort shall be made to make certain that the parolee understands the conditions of his parole." 18 U.S.C. § 4209(b).

15. The statute provides in relevant part:
"(b) Except as otherwise provided in this section, the jurisdiction of the Commission over the parolee shall terminate no later than the date of the expiration of the maximum

a foreign conviction may be treated as conclusive evidence of a violation of law. Santella Affidavit, Ex. J. The only exception to this treatment of a foreign conviction, the Manual notes, is where the parolee can "provide evidence that the conviction was obtained by blatantly improper means (fraud, duress, etc.) or that the conduct committed is not recognizable as a criminal violation under U.S. domestic law." Id. Carmel has submitted no such evidence. In addition, at least part of the admitted activity which underlies Carmel's French conviction—fraudulent use of a credit card—is unlawful under United States law. See 15

U.S.C. § 1644.[16] In these circumstances, the Commission's consideration of Carmel's foreign convictions in determining to revoke parole was entirely appropriate and abridged no constitutional right.

## IV.

To the extent that Carmel means to quarrel with the manner in which the Commission calculated his revised presumptive release date in reliance upon his foreign convictions, the claim is meritless.

The Commission determined in accordance with its regulations, see 28 C.F.R. § 2.20,[17] that Carmel's "salient factor

---

term or terms for which he was sentenced, except that—

"(1) such jurisdiction shall terminate at an earlier date to the extent provided under section 4164 (relating to mandatory release) or section 4211 (relating to early termination of parole supervision), and

"(2) in the case of a parolee who has been convicted of a Federal, State, or local crime committed subsequent to his release on parole, and such crime is punishable by a term of imprisonment, detention or incarceration in any penal facility, the Commission shall determine, in accordance with the provisions of section 4214(b) or (c), whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense, but in no case shall such service together with such time as the parolee has previously served in connection with the offense for which he was paroled, be longer than the maximum term for which he was sentenced in connection with such offense."

According to Michael J. Santella, a Case Analyst for the Commission's Northeast Region, the Commission views the omission of foreign convictions from this provision as precluding the use of such convictions in calculating forfeited "street time" and the Commission has so provided in its Procedures Manual. Santella Affidavit at ¶ 14.

16. Section 1644 provides:

"Whoever, in a transaction affecting interstate or foreign commerce, uses any counterfeit, fictitious, altered, forged, lost, stolen, or fraudulently obtained credit card to obtain goods or services, or both, having a retail value aggregating $5,000 or more, shall be fined not more than $10,000 or imprisoned not more than five years, or both." 15 U.S.C. § 1644.

17. Relying on Carmel's admission of new criminal conduct the Commission applied its general

parole guidelines in accordance with § 2.21(b), which provides:

"(1) If a finding is made that the prisoner has engaged in behavior constituting new criminal conduct, the appropriate severity rating for the new criminal behavior shall be calculated. New criminal conduct may be determined either by a new federal, state, or local conviction or by an independent finding by the Commission at revocation hearing. As violations may be for state or local offenses, the appropriate severity level may be determined by analogy with listed federal offense behaviors.

"(2) The guidelines for parole consideration specified at 28 CFR 2.20 shall then be applied. The original guideline type (e. g., adult, youth) shall determine the applicable guidelines for the parole violator term, except that a violator committed with a new federal sentence of more than one year shall be treated under the guideline type applicable to the new sentence."

The general parole guidelines are set forth at § 2.20 and provide as follows:

"(a) To establish a national paroling policy, promote a more consistent exercise of discretion, and enable fairer and more equitable decision-making without removing individual case consideration, the United States Parole Commission has adopted guidelines for parole release consideration.

"(b) These guidelines indicate the customary range of time to be served before release for various combinations of offense (severity) and offender (parole prognosis) characteristics. The time ranges specified by the guidelines are established specifically for cases with good institutional adjustment and program progress.

"(c) These time ranges are merely guidelines. Where the circumstances warrant, decisions outside of the guidelines (either above or below) may be rendered.

"(d) The guidelines contain examples of offense behaviors for each severity level.

score," which refers to the potential risk of parole violation, was 3. Santella Affidavit, Ex. H. Relying solely on Carmel's description of the offense which led to his conviction in France as involving the fraudulent use of credit card in the amount of $20,000 for a period in excess of one year, the Commission evaluated the offense behavior of this new criminal activity as High Severity. *Id.* Together, these two factors typically indicate a guideline of 34–44 months before release. *Id.* In view of a prior instance of parole violation, the underlying sentence and new criminal conduct during the parole period, the Commission determined that Carmel should serve a total of 47 months—three months above the high-end guidelines for Carmel's salient factor score and offense severity rating. *See* 28 C.F.R. § 2.21(c).[18] Taking into account the time spent in foreign and federal custody, the Commission directed that Carmel be continued to a presumptive parole date of May 24, 1982, with credit for the time spent under supervision from the date of his release until July 6, 1973, when he absconded. Santella Affidavit, Ex. I, K. Thus, no consideration of the foreign convictions was made in determining forfeited "street time"; Carmel only forfeited "street time" for the period following the date on which he absconded. This treatment is consistent with the parole guidelines and the Commission's Manual. *See* Santella Affidavit, Ex. J.

### CONCLUSION

In sum, the Commission's consideration of Carmel's foreign convictions in its decision to revoke parole and in its determination of Carmel's presumptive re-parole date is reasonable, rational and consistent with law. In these circumstances, the petition presents no grounds for the requested relief.

Accordingly, petitioner Jerald Carmel's petition pursuant to 28 U.S.C. § 2241 for a writ of habeas corpus is denied.

Because I find the petition to present no question deserving of appellate review, I decline to issue a certificate of probable cause to appeal. *Alexander v. Harris*, 595 F.2d 87 (2d Cir. 1979). The Clerk is directed to dismiss the petition forthwith.

It is So Ordered.

---

18. Section 2.21 of the regulations provides in relevant part as follows:

"(c) The above are merely guidelines. A decision outside these guidelines (either above or below) may be made when circumstances warrant. For example, violations of an assaultive nature or by a person with a history of repeated parole failure may warrant a decision above the guidelines. Minor offense(s) (e.g., minor traffic offenses, vagrancy, public intoxication) shall normally be treated under administrative violations." 28 C.F.R. § 2.21(c)

See also § 2.20(d), note 17, *supra.*

However, especially mitigating or aggravating circumstances in a particular case may justify a decision or a severity rating different from that listed.

"(e) An evaluation sheet containing a 'salient factor score' serves as an aid in determining the parole prognosis (potential risk of parole violation). However, where circumstances warrant, clinical evaluation of risk may override this predictive aid." 28 C.F.R. § 2.20 (1979).

Specific guidelines in chart form are found in the regulations following this text.